FILED

2022 JUL -8 PM 3:56

GRAYS HARBOR CO.
KYM FOSTER
COUNTY CLERK

1

2

3

4

5

6

7       IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR

8                          COUNTY OF GRAYS HARBOR

9    TRG INVESTMENTS, LLC, a Washington          No. 22-2-388-14
     Limited Liability Company,
10
     Plaintiff,
11                                               COMPLAINT FOR DAMAGES
              vs.
12
     OREGON MUTUAL INSURANCE
     COMPANY, a foreign insurance corporation,
13
     Defendant.
14

15   Plaintiff, through counsel, for its cause of action, alleges as follows:

16                          I.     PARTIES

17   1.      At all times material to this complaint, Plaintiff, TRG Investments, LLC (hereinafter

18   "TRG") is a Washington limited liability company engaged in the business of property

19   management, property rental, and retail. TRG's governors are Blain Roberts, Kim Roberts, and

20   Carrie Roberts.

21   2.      TRG's principal office street address and mailing address is 11 South Arbor Road,

22   Aberdeen, WA 98520. It was formed on August 7, 2000.

23   3.      TRG's governors, Blain Roberts, Kim Roberts, and Carrie Roberts, are residents of

24   Grays Harbor County, Washington.

COMPLAINT - Page 1
Case No.



BASTION LAW
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

4.      On information and belief, Defendant Oregon Mutual Insurance Company (hereinafter "Oregon Mutual") is a foreign insurer, incorporated with and with its primary place of business in the state of Oregon. Oregon Mutual sells insurance in Oregon and Washington State through a network of insurance brokers.

5.      All individuals involved in the wrongful or bad faith denial of insurance coverage as detailed herein and all individuals who worked for Oregon Mutual on the claim at issue or who set the policies that were followed when the claim at issue was processed, investigated, and evaluated were employees of Oregon Mutual and were acting within the course and scope of their employment at all times relevant hereto. These individuals also acted as agents of Oregon Mutual with actual or apparent authority to act on Oregon Mutual's behalf.

6.      Oregon Mutual is appropriately named in this Complaint.

## II.      JURISDICTION AND VENUE

7.      This court has personal jurisdiction over Oregon Mutual under Washington's long-arm statute, RCW 4.28.185(1)(a) because Oregon Mutual transacted business within Washington State, because Oregon Mutual committed a tortious act within Washington State, RCW 4.28.185(1)(b), and because Oregon Mutual "contracted to insure any person, property, or risk located within [Washington] state at the time of contracting." RCW 4.28.185(1)(d).

8.      Venue is proper pursuant to CR 82(a)(2) because Oregon Mutual is a nonresident and transacted business within Grays Harbor County. Venue is also proper pursuant to CR 82(a)(3) because Oregon Mutual is a nonresident and Plaintiffs reside in Grays Harbor County.

## III.      STATEMENT OF FACTS

A.      **TRG Owns and Operates a Winery and Distillery on Its Property**

9.      TRG is an entity that was formed to own and manage the Westport Winery Garden

COMPLAINT - Page 2
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 208-752-3314

1  Resort. TRG's governors, Blain Roberts, Kim Roberts, and Carrie Roberts, are a family. Blain

2  and Kim are married. Their daughter is Carrie.

3  10.    The Westport Winery Garden Resort property totals 21.36 acres and is comprised of

4  two contiguous parcels (hereinafter, collectively, the "Property").

5  11.    One such parcel, "Parcel A", is 2.9 acres and includes a 3,888 square-foot building with

6  occupancy for 98 persons. That building (hereinafter the "Restaurant Building"), which was

7  constructed in 2008, holds the Westport Winery's gift shop, tasting room, over-21 tasting area,

8  an office, two restrooms, a mechanical room, and a restaurant dining room, commercial

9  kitchen, pantry, and walk-in cooler. A 24' x 24' dining space was added in 2013. The

10  commercial food operation is home of the Sea Glass Grill, which has been voted one of the top

11  five winery restaurants by USA Today on two separate occasions. Parcel A also contains a

12  forty-foot lighthouse which is the iconic symbol for the business.

13  12.    The other buildings located on Parcel A are a 12' x 16' glass greenhouse constructed

14  in 2012, which is used as a private tasting room (hereinafter the "Greenhouse Building").

15  13.    In 2020, the Roberts erected a 30' x 40' Quonset tent with metal framing on Parcel A

16  for outdoor dining to mitigate the effects of the COVID pandemic.

17  14.    Parcel A also holds a 52-space lighted and paved parking lot, a 12' x 48' wooden

18  pergola for playing petanque, and an additional 3,888 square-foot building with a 99-person

19  occupancy, which was constructed in 2021. This building (hereinafter the "Museum Building")

20  houses the International Mermaid Museum's gift shop, a theater, a gallery, two restrooms, an

21  office, and an exhibition hall. The International Mermaid Museum is a 501(c)(3) non-profit

22  that is dedicated to teaching ocean ecology to museum-goers. It collects admission, donations,

23  and membership fees, which it then provides to local grade school curriculums and high-school

24

COMPLAINT - Page 3
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1   scholarships.

2   15.      Also located on Parcel A are two flag poles, a twelve-foot roadside mermaid sculpture,

3   a lighted entry sign, a dog park, a lemon cypress maze, and a musical fence.

4   16.      The second of the two contiguous parcels on the Property (hereinafter "Parcel B")

5   contains two residences: one for Blain and Kim and another for Carrie. Each residence has a

6   garage, a yard, and a fire pit as well as multiple bedrooms and bathrooms.

7   17.      Parcel B also contains an 800-square-foot pool building with an in-ground lap pool and

8   hot tub, which was built in 2015. Also included in Parcel B are an '8 x 10' portable shed for

9   fuel storage.

10  18.      The commercial winery business sits on Parcel B. It contains a 4,960 square-foot wine

11  warehouse (hereinafter "Wine Warehouse"), which was built in 2009, with a barrel room

12  enclosed in 2018. It has three overhead doors, a restroom, and a covered 24' x 36' exterior

13  storage space.

14  19.      The "Old Distillery Production Building" was constructed in 2017 as an "ag exempt"

15  structure, which does not require a building permit as its use was farm and wine equipment

16  storage, including personal property. It was remodeled in 2019 to bring it up to code for

17  distillery production including new permitting. It was a 2,880 sq ft 36 x 80 pole building with

18  six overhead doors two manual doors, and two windows. It had power, water, and Wi-Fi. The

19  Old Distillery Production Building was located 20 feet from the "Wine Production Building."

20  20.      A 3,168-square-foot building (hereinafter the "Wine Production Building") was

21  constructed in 2007. It has seven overhead doors, and a heated bay that alternated between

22  producing wine and distilling. The building also contains a 432-square-foot office with a

23  private bedroom, bath, and kitchenette, and a mechanical room. The remainder of the building

24



BASTION LAW
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1   is used for wine production.

2   21.     In 2020, a 1,728-square-foot pole barn (hereinafter the "Barn Building") was added.

3   Although it operates as a storage building currently, it is slated to be converted to a small event

4   venue with restroom and bridal changing rooms. It is adjacent to the wedding garden.

5   22.     As the Roberts make wine and spirits, they often must shuttle stock, equipment, and

6   property between different buildings on the property.

7   23.     Parcel B has four RV spaces with electric, water, and Wi-Fi. Parcel B also has a gravel

8   parking space with 28 spaces, a seventy-foot diameter pond with concrete block amphitheater

9   seating, a 12' x 12' gazebo, and fifteen acres of display gardens. The gardens are integrated

10  with thousands of strawberry and blueberry plants, miles of gravel trails, sixty outdoor

11  sculptures, one hundred interpretive signs, a nine-hole disc golf course, a nine-hole executive

12  golf course, a wedding lawn and tent area, a lavender labyrinth, and a rock labyrinth.

13  **B.      TRG Purchased Insurance Coverage and Benefits from Oregon Mutual**

14  24.     TRG entered into an agreement (hereinafter the "Insurance Contract") with Oregon

15  Mutual to pay premiums in exchange for various insurance benefits. The Insurance Contract is

16  a policy numbered SMO5419920358 and was effective from September 17, 2020, to

17  September 17, 2021. The Insurance Contract included coverage for Commercial Property and

18  Farm Property.

19          *i.      Commercial Property Coverage*

20  25.     Under the Building and Personal Property Coverage Form of the Insurance Contract's

21  Commercial Property coverage (hereinafter the "Commercial Coverage Form"), the following

22  coverage, among others, was provided from Oregon Mutual to TRG: "We will pay for direct

23  and physical loss of or damage to Covered Property at the premises described in the

24

COMPLAINT – Page 5
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1 Declarations caused by or resulting from any Covered Cause of Loss." Insurance Contract, CP

2 00 10 10 00, at Page 1 of 12.

3 26.  Beginning in the very next line of the Insurance Contract, "Covered Property" is stated

4 to include the following:

5   **a. Building,** meaning the building or structure described in the Declarations...
   **b. Your Business Personal Property** located in or on the building described in the
6   Declarations or in the open (or in a vehicle) within 100 feet of the described
   premises, consisting of the following unless otherwise specified in the Declarations
7   or on the Your Business Personal Property - Separation of Coverage form:
   ...
8   (2) Machinery and equipment;
   (3) "Stock";
9   (4) All other personal property owned by you and used in your business;
   (5) Labor, materials or services furnished or arranged by you on personal property
10      of others;
   ...
11
Insurance Contract, CP 00 10 10 00, at Page 1 of 12 (emphases in original)
12
13 27.  The Commercial Property Coverage Part Declarations (hereinafter "Commercial

14 Declarations") list four separate buildings at Location 001 as being covered. Location 001 is

15 identified as 1 S. Arbor Rd., Aberdeen, WA, Grays Harbor County 98520. Building 001 at

16 Location 001 is identified as the "Restaurant/Tasting Room." Building 002 at Location 001 is

17 identified as the "Production Barn." Building 003 at Location 001 is identified as "Warehouse"

18 and Building 004 at Location 001 is identified as "Equipment Building."

19 28.  None of these labels used to identify each building were given by TRG or any other

20 insured. Each of these labels were given by Oregon Mutual without prior consultation with or

21 further explanation to TRG or any other insured regarding how the buildings would be

22 identified in the Insurance Contract or how anyone would know which building was which.

23 The Insurance Contract provides no other descriptions, identifications, locations, or

24 instructions as to which building on the premises is which.

COMPLAINT - Page 6
Case No.

1    29.    Moreover, the Commercial Property Special Cluster Endorsement to the Insurance

2    Contract provides: "You will not be penalized because of any unintentional error or omission

3    you may make in listing or describing a premises or location to be covered under this policy."

4    Insurance Contract, M2623 (1-19) at Page 5 of 13.

5    30.    The "Old Distillery Production Building" is within 100 feet of the structure that Oregon

6    Mutual contends is referred to in the Commercial Declarations as both Building 002 and

7    "Production Barn".

8    31.    The very first line under the first "Coverages" heading of the Commercial Declarations

9    states:

10           Insurance at the described premises applies only for the coverages shown
             below:
11           BLANKET BUILDING LIMIT OF INSURANCE              $2,345,984
             BLANKET PERSONAL PROPERTY LIMIT OF INSURANCE  $2,172,600
12
     Commercial Property Coverage Part Declarations (first page).
13
     32.    The Insurance Contract provides blanket coverage to buildings and personal property
14
     at Location 001 through the portions of the Insurance Contract that provide coverage for
15
     commercial property, including the Commercial Declarations and Commercial Coverage
16
     Form.
17
     33.    The Commercial Declarations provide that the following coverages were among those
18
     provided to Building 001 at Location 001: Business Personal Property, Wine Stock, and
19
     Business Income Including Extra Expenses.
20
     34.    The Commercial Declarations provide that the following coverages were among those
21
     provided to Building 002 at Location 001: Building, Business Personal Property, and Wine
22
     Stock.
23
     35.    The Commercial Declarations provide that the following coverage was provided to
24

COMPLAINT - Page 7
Case No.

**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 208-752-3314

1   Building 003 at Location 001: Building.

2   36.    The Commercial Declarations provide that the following coverage was provided to

3   Building 004 at Location 001: Building

4   37.    The Commercial Coverage Form indicates that Covered Causes of Loss are determined

5   via the "Causes of Loss Form as shown in the Declarations." Insurance Contract, CP 00 10 10

6   00, at Page 2 of 12.

7   38.    Under the "Covered Cause" columns listed in the Commercial Declarations, the

8   Insurance Contract lists "Basic Form" and "Special Form" for every Building listed.

9   39.    Under the Causes of Loss – Special Form of the Insurance Contract's Commercial

10  Property coverage (hereinafter "Causes of Loss – Special Form"), the Insurance Contract

11  states:

12      **A. Covered Causes of Loss**
        When Special is shown in the Declarations, Covered Causes of Loss means Risks
13      of Direct Physical Loss unless the loss is:
            **1.** Excluded in Section **B.**, Exclusions; or
14          **2.** Limited in Section **C.**, Limitations; that follow.

15  Insurance Contract, CP 10 30 10 00 at Page 1 of 7 (emphases in original).

16  40.    The Insurance Contract does not apply any limitations to Commercial Property

17  coverage specific to losses caused by fire.

18  41.    Section C to Causes of Loss – Special Form does not apply any limitations to coverage

19  specific to losses caused by fire.

20  42.    Under the terms of the Insurance Contract, including the Cause of Loss – Special Form

21  and the Commercial Coverage Form, a fire is a covered cause of loss under the Insurance

22  Contract's Commercial Property coverage.

23  43.    TRG obtained additional coverage from Oregon Mutual by purchasing a "Vintner

24

COMPLAINT - Page 8
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1  Insurance Protection Gold Medal Property Endorsement" (hereinafter "Vintner Endorsement")

2  to be added to the Insurance Contract.

3  44.    The Vintner Endorsement increased the scope of the Business Personal Property

4  coverage provided in the Commercial Coverage Form by increasing the distance from the

5  described premises within which Business Personal Property could be stored and still covered

6  as Business Personal Property from 100 feet to 1000 feet. Vintner Endorsement, M2890P (4-

7  15) at Page 3 of 7.

8  45.    The increased scope of coverage described in the paragraph above was specifically

9  advertised by Oregon Mutual as a featured benefit for those insureds who purchase the Vintner

10  Endorsement on their Oregon Mutual policies.

11  46.    The following image is taken from the Oregon Mutual web page regarding its Vintner

12  Insurance Protection endorsements, including the Gold Medal version purchased by TRG:

13

14

> ### Business Personal Property
>
> Extends the distance within which covered property must be from the described premises in order for coverage to apply from 100 feet to 1,000 feet.

15

16

17

18

19  47.    Under the Commercial Coverage Form, both TRG and Oregon Mutual have a right to

20  require the parties to participate in appraisal when they disagree as to the value of property or

21  a loss:

22          **E. Loss Conditions**
              The following conditions apply in addition to the Common Policy

23          Conditions and the Commercial Property Conditions.
              ...

24

COMPLAINT - Page 9
Case No.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding....

Commercial Coverage Form, CP 00 10 10 00 at Page 7 of 12.

    ii.    *Farm Property Coverage*

48.     Under the Farm Property – Farm Dwellings, Appurtenant Structures and Household Personal Property Coverage Form in the Insurance Contract (hereinafter the "Farm Coverage Form"), the following coverage was provided from Oregon Mutual to TRG:

**COVERAGE C – HOUSEHOLD PERSONAL PROPERTY**
**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the "insured location" described in the Declarations, or elsewhere as expressly provided below, caused by or resulting from any Covered Cause of Loss.

Farm Coverage Form, FP 00 12 09 03 at Page 3 of 7 (emphasis in original).

49.     "Insured location", as used in the Farm Coverage Form, "means any location, including its private approaches, described in the Farm Property Declarations." Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, FP 00 90 09 03 at Page 6 of 6.

50.     The Farm Property Coverage Form Declaration describes the "Insured Location" as:

1S ARBOR RD – RESIDENTIAL
ABERDEEN
WA 98250

51.     The Farm Coverage Form restricted coverage for "business property" unless such property was subject to certain exceptions:

COMPLAINT - Page 10
Case No.

**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1

**COVERAGE C – HOUSEHOLD PERSONAL PROPERTY**
**A.   Coverage**

2

...

**2. Property Not Covered**
Under Coverage C, Covered Property does not include:

3

...

4

e. "Business property" except to the extent provided for in items e. and f. under
Paragraph A.3. Special Limits of Insurance Under Coverage C;...

5

Farm Coverage Form, FP 00 12 09 03 at Page 3 of 7 (emphasis in original).

6

52.    "Business property", as used in the Farm Coverage Form, "means property pertaining

7

to any trade, profession or occupation other than farming." Farm Property – Other Farm

8

Provisions Form – Additional Coverages, Conditions, Definitions, FP 00 90 09 03 at Page 5

9

of 6.

10

53.    The Farm Coverage Form provided coverage to "business property" through the

11

exceptions to which it referred in item e. under Paragraph A.2. Property Not Covered under

12

Coverage C:

13

**COVERAGE C – HOUSEHOLD PERSONAL PROPERTY**
**A. Coverage**

14

...

15

**3.   Special Limits of Insurance Under Coverage C**
Certain categories of household personal property are subject to Special

16

Limits of Insurance. These special limits are part of, not in addition to,
the applicable Limit of Insurance shown in the Declarations. The special

17

limit shown with any category listed below is the most we will pay for
loss of or damage to all property in that category in any one occurrence:

18

...

e. $2,500 on "business property" on the "insured location";

19

f. $500 on "business property" off the "insured location"...

20

Farm Coverage Form, FP 00 12 09 03 at Page 3-4 of 7 (emphasis in original).

21

54.    The limits of insurance under Coverage C of the Farm Coverage Form were increased

22

in an endorsement to that coverage purchased by TRG:

23

**12.  Special Limits Of Insurance Under Coverage C**
Paragraph   a.3.   of   COVERAGE   C-HOUSEHOLD   PERSONAL

24

**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1  PROPERTY of Section I, form FP 00 12 is replaced by the following:
   Certain categories of household personal property are subject to Special
2  Limits of Insurance. These special limits are part of, not in addition to, the
   applicable Limit of Insurance shown in the Declarations. The special limit
3  shown with any category listed below is the most we will pay for loss of
   or damage to all property in that category in any one occurrence:
4  ...
       e.   $5,000 on "business property" on the "insured location";
5      f.   $1,000 on "business property" off the "insured location"...

6  Farm Personal Cluster Endorsement, M2689F (12-19) at Page 3-4 of 5.

7  55.    Under the Farm Coverage Form, both TRG and Oregon Mutual have a right to require

8  the parties to participate in appraisal when they disagree as to the value of property or a loss:

9      **B. Farm Property Conditions**
       In addition to the Common Policy Conditions and the Conditions in the
10     individual Coverage Forms, the following apply:
       **LOSS CONDITIONS**
11     ...
       **2. Appraisal**
12     If we and you disagree on the value of the property or the amount of loss,
       either may make written demand for an appraisal of the loss. In this event,
13     each party will select a competent and impartial appraiser. The two
       appraisers will select an umpire. If they cannot agree, either may request
14     that the selection be made by a judge of a court having jurisdiction. The
       appraisers will state separately the value of the property and amount of
15     loss. If they fail to agree, they will submit their differences to the umpire.
       A decision agreed to by any two will be binding...

16
   FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
17 COVERAGES, CONDITIONS, DEFINITIONS, FP 00 90 09 03 at Page 2 of 6.

18 C.    **A Fire Destroys the Old Distillery Production Building**

19 56.    On May 15, 2021, a fire (hereinafter the "Fire") started in the Old Distillery Production

20 Building. The cause of the Fire was a malfunction in the still. The building and its contents

21 were damaged beyond repair.

22 57.    The cost of demolishing the Old Distillery Production Building and constructing its

23 replacement, the New Production Building, totaled approximately $431,600.00.

24
   COMPLAINT - Page 12
   Case No.

**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

58.     The Old Distillery Production Building was erected upon a concrete pad. The Fire was hot enough that it altered the chemical structure of the concrete pad on which the building sat, causing the pad to delaminate, spaul, and crack. The Fire rendered the concrete pad unsuitable for reconstruction.

59.     At the time of the Fire, the Old Distillery Production Building contained several supplies used for making and bottling wine and distilling alcohol, including bottles, capsules, corks, filters, hoses, chemicals, fruit, labels, and other equipment. Most of these supplies were damaged by the Fire beyond repair or salvage. The total value of these lost supplies was approximately $380,029.00.

60.     At the time of the Fire, the Old Distillery Production Building also contained business and personal property. That property was damaged beyond repair. The total value of the lost property was approximately $219,595.32.

**D.     TRG Submits Claims for Insurance Benefits to Oregon Mutual**

61.     As a result of the Fire, TRG timely submitted several claims for payment of insurance benefits to Oregon Mutual pursuant to the Insurance Contract. These included a claim for business income loss totaling $199,492.00, a claim for the loss of the building and stock totaling $811,978.91, and a claim for the loss of business personal property totaling $219,595.32.

62.     In response to those claims, Oregon Mutual offered only the following benefits: $29,074.00 for the repair of the concrete slab on which the damaged building sat; $15,000.00 for commercial property perishable stock; $307,416.88 for repairs to the damaged building; $6,482.77 for reimbursement of fire department service charges; $254.49 for reimbursement of cable repairs; $1,960.20 for the rental of temporary fencing; and $50,000.00 as an advance



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1    against damage to the building.

2    **E.       Oregon Mutual Denies Full Payment to Repair or Replace the Concrete Slab**

3    63.       Oregon Mutual denied two portions of TRG's claim. First, it disputed the scope of work

4    with regard to the concrete slab. After the fire, TRG hired Jeffrey Leer, a senior estimator with

5    McBride Construction Resources, Inc. to provide an estimate of the cost of repairing and or

6    replacing the concrete slab. Mr. Leer estimated that the cost of replacing the slab would be

7    $108,210.86.  He estimated that the cost of repairing the slab would be $129,627.86.

8    64.       In response, Oregon Mutual hired an engineer named David Williams with EDT

9    Forensic Engineering & Consulting who estimated that the slab could be repaired for

10   $29,074.00.

11   65.       Mr. Williams' report did not consider the full scope of work. In general, it opted simply

12   to patch concrete that had been structurally damaged by the fire, rather than replacing electrical

13   stub outs in the repair areas, placing epoxy in cracks created by the fire, placing expansion

14   joints where the concrete would be cut, and grinding and overlaying the surface to place the

15   slab back into its pre-loss condition. Mr. Williams' estimate also failed to take into account the

16   additional costs incurred in engineering and permitting.

17   66.       To mitigate their losses, TRG constructed a 3,888-square-foot building (hereinafter the

18   "New Production Building") to replace the Old Distillery Production Building. The New

19   Production Building has two overhead doors, three contained areas for spirit storage, a

20   distilling room, and a 3,024-foot-storage area.

21   67.       TRG paid for the construction of the New Production Building with TRG's own funds

22   and financing because Oregon Mutual did not pay insurance benefits sufficient to cover the

23   cost of replacing the Old Distillery Production Building.

24

COMPLAINT - Page 14
Case No.

**F.    Oregon Mutual Refuses to Participate in an Appraisal**

68.    Pursuant to Insurance Contract, TRG demanded appraisal to resolve the disparity between the two estimates and selected its appraiser.

69.    Oregon Mutual refused to participate in any appraisal.

70.    Oregon Mutual indicated that it would be willing to participate in arbitration instead of appraisal.

71.    Oregon Mutual indicated that it would participate in arbitration to resolve disputes involving multiple requests for benefits instead of working to resolve each of those disputes individually.

**G.    Oregon Mutual Denies Coverage and Benefits for TRG's Business Personal Property Loss**

72.    In a letter dated June 6, 2021, Oregon Mutual denied coverage for TRG's claim for loss of Business Personal Property:

> [B]enefits pertaining to Business Personal Property are available if a limit of insurance is shown in the Declarations for that type of property, or the Business Personal Property is located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises. In this case, the Declarations for policy #SM0920358 reflects four separate commercial buildings at 1 South Arbor Road – Aberdeen WA, 98520. While Declarations do show $2,172,600 in Business Personal Property coverage is available for both Building #1 and Building #2; those same Declarations do not show any Business Personal Property coverage to be available against either Building #3 or Building #4 (the structure destroyed on 5/15/2021). Moreover our investigation has confirmed the physical distance between Building #2 and Building #4 is greater than the cited 100 foot allowance.

73.    Oregon Mutual contends that the Old Distillery Production Building is neither the structure identified as Building 001 at Location 001 in the Commercial Declarations nor the structure identified as Building 002 at Location 001 in the Commercial Declarations.

74.    Oregon Mutual contends that the Old Distillery Production Building was identified as

COMPLAINT – Page 15
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1   Building 004 at Location 001 in the Commercial Declarations.

2   75.     Other than describing Buildings 002, 003, and 004 as "Production Barn", "Warehouse",

3   and "Equipment Building", respectively, in the Commercial Declarations, Oregon Mutual did

4   not provide TRG with any information or documentation to indicate or assist in determining

5   which Building listed in the Commercial Declarations denoted the Old Distillery Production

6   Building.

7   76.     The identification and descriptions of the structures labeled as Buildings 002, 003, and

8   004 in the Commercial Declarations are subject to more than one reasonable interpretation.

9   77.     The identification and descriptions of the structures labeled as Buildings 002, 003, and

10  004 in the Commercial Declarations are ambiguous.

11  78.     Based on the language of the Insurance Contract, a reasonable person could easily

12  determine that Building 002, as listed in the Commercial Declarations, refers to the Old

13  Distillery Production Building.

14  79.     Oregon Mutual contends that the Blanket Personal Property Limit of Insurance totaling

15  $2,172,600 (per the Commercial Declarations) neither applies to nor provides personal

16  property coverage to the structures identified as Buildings 003 and 004 in the Commercial

17  Declarations.

18  **H.      Oregon Mutual's Acts and Omissions Were Unreasonable, Wrongful, and
         Unlawful**
19
     80.     Throughout TRG's claim, Oregon Mutual consistently acted to benefit its own financial
20
     interests and to put them above the interests of its insured, TRG.
21
     81.     Oregon Mutual was obligated by virtue of the Insurance Contract to pay the full costs,
22
     up to the applicable limits of insurance benefits, to replace the concrete slab that was damaged
23
     by the Fire.
24

BASTION LAW
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 208-752-3314

1   82.     Oregon Mutual offered substantially less benefits than those that were necessary to
2   replace the concrete slab.

3   83.     Oregon Mutual refused to pay benefits for any concrete slab repairs or replacements
4   beyond select repairs that would fail to make the concrete slab usable or restore it to pre-loss
5   condition.

6   84.     Oregon Mutual failed to reasonably investigate and evaluate the full scope of damage
7   and necessary repair or replacement of the concrete slab.

8   85.     Oregon Mutual refused to participate in the appraisal process set forth in the Insurance
9   Contract even after receiving notice that TRG demanded appraisal and had selected an
10  appraiser.

11  86.     Oregon Mutual failed to adequately identify the structures covered by the Insurance
12  Contract such that any reasonable person could be certain as to whether Building 002, 003, or
13  004 in the Commercial Declarations referred to the Old Distillery Production Building.

14  87.     Oregon Mutual narrowly construed the language of the Insurance Contract in a manner
15  that resulted in a denial of benefits to TRG.

16  88.     Oregon Mutual should have liberally construed the language of the Insurance Contract
17  regarding the identification of the covered structures such that ambiguities would have been
18  construed in favor of its insured, TRG.

19  89.     Oregon Mutual failed to appropriately apply the blanket coverage provided by the
20  Commercial Declarations.

21  90.     Several of Oregon Mutual's actions and omissions during its handling, evaluating,
22  investigating, and developing coverage determinations regarding TRG's claims for benefits as
23  detailed herein, including but not limited to those actions and omissions described herein, were

24

COMPLAINT – Page 17
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 208-752-3314

1  unreasonable, negligent, and performed in bad faith.

2  91.    Throughout its handling, evaluating, investigating, and developing coverage

3  determinations regarding TRG's claims for benefits as detailed herein, Oregon Mutual placed

4  its own financial interests ahead of TRG's.

5  **IV.    CAUSES OF ACTION**

6  **A.    Breach of Contract**

7  92.    Plaintiff realleges and incorporates by reference all of the allegations in each of the

8  preceding paragraphs as though fully set forth herein.

9  93.    Oregon Mutual was bound by the terms of the Insurance Contract and was legally and

10  contractually obligated to perform its duties as outlined in the Insurance Contract.

11  94.    As detailed herein, Oregon Mutual failed to perform its duties as outlined in the

12  Insurance Contract and as governed by Washington law. These failures constituted breach of

13  contract on the part Oregon Mutual.

14  95.    As a result of Oregon Mutual's breaches of contract, TRG Investments sustained

15  damages including, but not limited to, deprivation of the insurance proceeds and benefits under

16  the Insurance Contract, and other damages, the amounts of which will be proven at trial.

17  **B.    Negligent Claims Handling**

18  96.    Plaintiff realleges and incorporates all of the allegations in each of the preceding

19  paragraphs as though fully set forth herein.

20  97.    Oregon Mutual had a duty to act reasonably when investigating, evaluating, and

21  administering the claim brought by TRG Investments. These duties are required by the

22  Insurance Contract and Washington Law. These duties including possessing working

23  knowledge of and working in compliance with Washington law governing the insurance

24



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 208-274-9380
F: 208-752-3314

1   industry.

2   98.    Oregon Mutual breached its duty to TRG Investments to act reasonably in handling the

3   claims brought to it by, among other things, failing to reasonably investigate, evaluate, and

4   administer the claims in accordance with Washington law, wrongfully denying the business

5   property claim, failing to adequately investigate the property damage claim, and placing its

6   own financial interest ahead of the Plaintiff's.

7   99.    As a result of Oregon Mutual's breaches of its duty to reasonably handle TRG's claim,

8   TRG sustained damages including, but not limited to deprivation of the insurance proceeds

9   and benefits due under the Insurance Contract, incurring legal expenses including attorney's

10  fees, and litigation costs, lost revenue and profit from its business, suffering general damages,

11  and incurring other damages, the amounts of which will be proven at trial.

12  **C.    Violation of the Consumer Protection Act**

13  100.   Plaintiff re-alleges and incorporates by reference all of the allegations in each of the

14  preceding paragraphs as though fully set forth herein.

15  101.   Oregon Mutual, though the conduct set forth herein, has acted unfairly and deceptively

16  in violation of Washington's Consumer Protection Act, more specifically RCW 19.86.020.

17  102.   Oregon Mutual's conduct described herein occurred in trade and commerce. That

18  conduct caused TRG Investments damages, including but not limited to all of the damages set

19  forth herein. That conduct has also affected the public interest.

20  103.   Plaintiffs are entitled to treble damages, injunctive relief, and to recovery of all

21  attorneys' fees and costs incurred in relation to this action in amounts to be proven during or

22  after trial.

23  **D.    Violation of the Insurance Fair Conduct Act**

24

COMPLAINT - Page 19
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1  104.   TRG Investments realleges and incorporates by reference all of the allegations in each

2  of the preceding paragraphs as though fully set forth herein.

3  105.   As detailed herein, TRG has asserted rights to insurance policy benefits, including

4  monies due as a result of the business personal property and property damage losses detailed

5  herein. Those benefits were, and continue to be, due and owed to TRG Investments pursuant

6  to the Insurance Contract and Washington law.

7  106.   As detailed herein, Oregon Mutual unreasonably denied TRG Investments' claim for

8  coverage. Oregon Mutual also unreasonably denied TRG Investments payment of benefits that

9  were due to TRG Investments pursuant to the Insurance Contract and Washington law. These

10 unreasonable denials constitute violations of Washington's Insurance Fair Conduct Act, more

11 specifically RCW 48.30.020.

12 107.   Plaintiff is entitled to treble damages, injunctive relief, and to recovery of all attorneys'

13 fees and costs incurred in relation to this action in amounts to be proven during or after trial.

14 108.   On March 4, 2022, Plaintiff sent a notice to the Office of the Insurance Commissioner

15 in compliance with RCW 48.30.015. More than twenty days have elapsed since those notices

16 were sent. Oregon Mutual has confirmed receipt of this notice. Oregon Mutual has since taken

17 no action to correct its wrongful actions and omissions detailed herein. All statutory

18 requirements under RCW 48.30.015 have been met.

19 **E.    Breach of Duty of Good Faith**

20 109.   Plaintiff re-alleges and incorporates by reference all of the allegations in each of the

21 preceding paragraphs as though fully set forth herein.

22 110.   All of the breaches, violations, and unreasonable or offending conduct by Oregon

23 Mutual as alleged herein were done knowingly, intentionally, or unreasonably by Oregon

24

COMPLAINT – Page 20
Case No.



**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1   Mutual and failed to comply with the duties that Oregon Mutual owed to TRG Investments,

2   including, but not limited to, the duty of good faith, quasi-fiduciary duties, and other legal

3   duties.

4   111.   Under the Insurance Contract and Washington law, the duties owed by Oregon Mutual

5   to TRG Investments include the following:

6           a.  To conduct a reasonable investigation, evaluation, and coverage determination

7               regarding the claims asserted by TRG Investments;

8           b.  To accurately represent pertinent facts, policy provisions, policy coverage, and

9               the law;

10          c.  To act with good faith to effectual a fair and equitable settlement of claims for

11              benefits asserted by TRG Investments;

12          d.  To refrain from compelling TRG Investments to initiate or submit to litigation,

13              arbitration, or appraisal to recover amounts due under the Insurance Contract

14              by offering substantially less than the amounts ultimately recovered and due

15              under the Insurance Contract;

16          e.  To give equal or greater consideration to TRG Investment's financial interests

17              than to Oregon Mutual's own financial interests;

18          f.  To construe ambiguous terms and provisions in the Insurance Contract in the

19              light most favorable to its insured, TRG;

20          g.  To comply with Washington law in all matters relating to the handling or

21              evaluation of the claims against TRG Investments;

22          h.  To not assert frivolous, unreasonable, or unsupportive coverage defenses or

23              denials.

24

COMPLAINT - Page 21
Case No.

**BASTION LAW**
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1   112.   Oregon Mutual has committed acts or omissions constituting one or more breaches of

2   Oregon Mutual's legal duties to TRG Investments as set forth above, including its duty of good

3   faith, its quasi-fiduciary duties, and its duties to reasonably investigate, evaluate, handle,

4   adjust, and administer the claims for benefits brought by TRG Investments in a prompt,

5   reasonable, and fair manner.

6   113.   As a result of Oregon Mutual's bad faith, TRG Investments sustained damages

7   including but not limited to deprivation of the insurance proceeds and benefits due under the

8   Insurance Contract, incurring legal expenses including attorneys' fees and litigation costs,

9   losing revenue and profit from its business, suffering general damages, and incurring other

10  damages, the amounts of which will be proven at trial.

11  ## V.   PRAYER FOR RELIEF

12  1.   For an order that Defendant must pay for Plaintiff's legal fees and costs pursuant to

13  *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), to Washington's

14  Insurance Fair Conduct Act, and to Washington's Consumer Protection Act.

15  2.   For damages to Plaintiff in an amount to be proven at trial;

16  3.   For trebling of damages pursuant to Washington's Consumer Protection Act and

17  pursuant to Washington's Insurance Fair Conduct Act.

18  4.   For pre-judgment interest and post-judgment interest;

19  5.   For all other expenses and relief that the Court deems reasonable, just, and proper.

20  ////

21  ////

22  ////

23  ////

24

COMPLAINT – Page 22
Case No.



BASTION LAW
113 Cherry St. PMB 97380
Seattle, WA 98104
P: 206-274-9380
F: 206-752-3314

1   Dated this July 7, 2022.

2
                                        **BASTION LAW, PLLC**
3

4
                                        _____
                                        ,Daniel McLafferty, WSBA # 45243
5                                       &Jesse Froehling, WSBA # 47881
                                        Attorneys for Plaintiff
6
                                        **ROBERT D. BOHM, PLLC**
7

8
                                        _____
                                        Robert D. Bohm, WSBA # 42703
9                                       Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    COMPLAINT - Page 23
    Case No.